UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 1249 PENSION FUND by Ryan Youngman as Administrator, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 1249 ANNUITY FUND by Ryan Youngman as Administrator, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 1249 INSURANCE FUND by Ryan Youngman as Administrator, NATIONAL ELECTRICAL BENEFIT FUND by its Board of Trustees, NEW YORK STATE LINEMAN'S SAFETY TRAINING FUND by its Board of Trustees, NORTHEASTERN JOINT APPRENTICE AND TRAINING FUND by its Board of Trustees, and I.B.E.W. LOCAL UNION NO. 1249 by Mark Lawrence as Business Manager, | 5:24-cv-637 (BKS/MJK) |

                                Plaintiffs,

v.

HIGHLINERS BARBECUE ENTERPRISES CORP. d/b/a Hotwire Line Construction and RANDY E. DEARING, individually and as an Officer of Highliners Barbecue Enterprises Corp. d/b/a Hotwire Line Construction,

                                Defendants.
_____

**Appearances:**

*For Plaintiffs*:
Nathaniel G. Lambright
Blitman & King LLP
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, NY 13204

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

Plaintiffs International Brotherhood of Electrical Workers Local Union No. 1249 Pension Fund, International Brotherhood of Electrical Workers Local Union No. 1249 Annuity Fund, International Brotherhood of Electrical Workers Local Union No. 1249 Insurance Fund (collectively, the "Local 1249 Funds"), National Electrical Benefit Fund, New York State Lineman's Safety Training Fund, Northeastern Joint Apprentice and Training Fund (together with the Local 1249 Funds, the "Funds"), and I.B.E.W. Local Union No. 1249 (the "Union"), through their administrator, boards of trustees, and business manager, filed this action against Defendants Highliners Barbecue Enterprises Corp. ("Highliners") and Randy E. Dearing, an officer and shareholder of Highliners, alleging that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and the Labor-Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 141 et seq. (Dkt. No. 1). Defendants have not answered the complaint or otherwise appeared in this action. Presently before the Court is Plaintiffs' motion pursuant to Rule 55 of the Federal Rules of Civil Procedure for default judgment. (Dkt. No. 16). Plaintiffs seek a monetary judgment against Defendants for amounts due to the Funds and Union, as well as attorneys' fees and costs. (Dkt. No. 16-4). For the following reasons, Plaintiffs' motion for default judgment is denied without prejudice.

**II.    DISCUSSION**

    **A.     Standard of Review & Clerk's Entry of Default**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a)

("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* N.D.N.Y. L.R. 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person[,] (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . [,] and (3) it has properly served the pleading to which the opposing party has not responded"). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* N.D.N.Y. L.R. 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . , a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

Plaintiffs commenced this action on May 8, 2024. (Dkt. No. 1). On June 30, 2024, Defendants were served with the summons and complaint. (Dkt. No. 10-1, ¶¶ 4–5; *see* Dkt. Nos. 6–7). On July 25, Plaintiffs requested a clerk's entry of default under Rule 55(a) for Defendants' "failure to plead or otherwise defend" in this action. (Dkt. No. 10, at 1). Plaintiffs' request was accompanied by an affidavit, as required by Local Rule 55.1, showing that: Defendant Dearing is not an infant, in active military service, or incompetent; Defendants failed to answer the complaint or otherwise defend the action in accordance with the Federal Rules of Civil Procedure; and Plaintiffs properly served the summons and complaint upon Defendants. (*See* Dkt. No. 10-1, at ¶¶ 4–5, 7–8). On July 26, a clerk's entry of default was entered against both Defendants. (Dkt. No. 12). Plaintiffs filed the instant motion for default judgment on September 30. (Dkt. No. 16). Although Plaintiffs served the motion on Defendants, (*see* Dkt. No. 17

3

(certificate of service)), Defendants filed no response. Therefore, Plaintiffs have met the procedural requirements and are entitled to an order of default under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b). Accordingly, the Court will address liability.

### B. Liability

By failing to appear in this action or oppose this motion, Defendants are deemed to have admitted the factual allegations in the complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (citation omitted)); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 9-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."), *report and recommendation adopted*, 2011 WL 1130457, 2011 U.S. Dist. LEXIS 32246 (E.D.N.Y. Mar. 28, 2011). But before entering default judgment, the Court must review the allegations to determine whether Plaintiffs have stated a valid claim for relief. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 1-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004).

#### 1. Relevant Agreements

Accompanying Plaintiffs' motion for default judgment is an affidavit (the "Lawrence Affidavit"), (Dkt. No. 16-1), attached to which are several relevant agreements, including the Collective Bargaining Agreement (the "CBA"), (Dkt. No. 16-2, at 97–126). The CBA is made up of the "NECA/IBEW National Outside Construction Emergency Response Agreement" (the "ERA") and the "Outside Utility Agreement Between Northeastern Line Constructors Chapter

4

National Electrical Contractors Association, Inc. and Local Union No. 1249 of the International Brotherhood of Electrical Workers" (the "OUA"). (Dkt. No. 16-1, ¶ 12).

The ERA states:

> This agreement made and entered into by and between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers, is applicable to all firms who sign a Letter of Assent to be bound by an outside construction agreement between any line construction chapter of NECA and any local union of the IBEW.

(Dkt. No. 16-2, at 97). It also states:

> This agreement shall take effect August 1, 2009, and shall remain in effect until August 1, 2012, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from August 1 through the last day of July of each year, unless either party terminates this agreement by providing written notification to the other party at least 90 days prior to the expiration date of the agreement or any anniversary date occurring thereafter.

(*Id.*). The ERA explains that its provisions "will be effective whenever a utility, municipality, or rural electric cooperative has called for a response to an 'emergency' in their service area" and that "[t]he agreement will continue until the contract has been released by the utility." (*Id.*). Further, "[d]uring the period of the 'emergency response,'" "[t]he minimum wage and fringe benefit package for all employees, including apprentices, working during an 'emergency response' shall be the wage and fringe benefit package of the site local 'outside' NECA/IBEW collective bargaining agreement." (*Id.* at 97–98). The ERA is signed for NECA by John M. Grau, CEO, and for the IBEW by Edwin D. Hill, International President, and dated in October 2009. (*Id.* at 98).

The OUA states "[i]t shall apply to all firms who sign a Letter of Assent to be bound by the terms of this Agreement." (*Id.* at 100–01). The OUA further specifies that it "shall take effect May 3, 2021 and shall remain in effect until May 4, 2025 unless otherwise specifically provided

5

for herein." (*Id.* at 103). It includes various provisions laying out the terms of an employer's relationship with the Union, and provides details on wage rates, fund contribution requirements, and other employment conditions. (*See id*. at 100–26). The OUA is signed for the Northeastern Line Constructors Chapter of NECA by Michael Gilchrist, Chapter Manager, and for the Union by Mark Lawrence, Business Manager. (*Id.* at 126).

The record, however, does not contain a "Letter of Assent" between Defendants and IBEW Local Union 1249. Lawrence has attached four "Letters of Assent" between Defendants and IBEW Local Unions 2, 53, 222, and 876 to his affidavit. (*See* Dkt. No. 16-2, at 89, 91, 93, 95). The first three letters are labeled "Letter of Assent - A" and state that "the undersigned firm does hereby authorize" the relevant chapter of NECA "as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved" specified outside labor agreement between the relevant chapter of NECA and the relevant local union. (*Id.* at 89, 91, 93).[1]  Each of these letters then states that "[i]n doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements," as well as the date that the agreement became effective, all of which were in 2022. (*Id.*). And each is signed by the business manager for the relevant local union and Defendant Dearing for Hotwire Line Construction (i.e., Defendant Highliners). (*Id.*).

The fourth letter, labeled "Letter of Assent - B," states that the letter "is to certify that the undersigned employer has examined a copy of the current approved 6-876-A Outside Utility & Commercial Power labor agreement between American Line Builders Chapter NECA and Local

---

[1] The first Letter of Assent labels the agreement as the "Outside Power/Commercial labor agreement" and is "between the Missouri Valley Line Constructors Chapter of NECA and Local Union 0002, IBEW," (Dkt. No. 16-2, at 89); the second Letter of Assent labels the agreement as the "Outside Power and Commercial labor agreement" and is "between the MO Valley Line Constructions Chapter Inc. NECA Inc. and Local Union 0053, IBEW," (*id.* at 91); and the third Letter of Assent labels the agreement as the "Outside Line Construction labor agreement" and is "between the Southeastern Line Constructors Chapter-NECA and Local Union 222, IBEW," (*id.* at 93).

6

Union 876, IBEW." (*Id.* at 95). It further states that "[t]he undersigned employer hereby agrees to comply with all the provisions contained in the above mentioned agreement and all approved amendments thereto, as well as subsequent approved agreements between American Line Builders Chapter NECA and Local Union 876, IBEW" and that "[i]t is understood that the signing of this letter of assent shall be as binding on the undersigned employer as though he had signed the above referred to agreement, including any approved amendments thereto, and any subsequent approved agreements." (*Id.*). The letter was signed by the business manager of IBEW Local Union 876 and Defendant Dearing for Hotwire Line Construction and states it is effective as of November 3, 2022. (*Id.*).

### 2. ERISA § 515 (29 U.S.C. § 1145)

Under Section 515 of ERISA:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

"To establish a violation of Section 515, [the] [p]laintiffs must show that [the] [d]efendant (1) is an employer; (2) is bound by a CBA that required payment of contributions; and (3) failed to make those contributions." *Annuity, Pension, Welfare, Training and Labor Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Local 14-14B, AFL-CIO v. C.M. Ashland Constr.*, 714 F. Supp. 3d 167, 179 (E.D.N.Y. 2024) (citation omitted). "[A]n employer in an ERISA action for unpaid contributions is bound to the terms of an ERISA plan document . . . only if the employer objectively manifests an intent to be so bound, as evaluated under ordinary principles of contract interpretation." *32BJ North Pension Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 95 (2d Cir. 2019). Additionally, "the Supreme Court has held that collective-

7

bargaining agreements and ERISA plan documents 'must be interpreted according to ordinary principles of contract law.'" *Id.* at 99 (quoting *CNH Indus. N.V. v. Reese*, 583 U.S. 133, 135 (2018)).

According to the First Cause of Action, Defendant Highliners is liable under ERISA for failing to remit required contributions and deductions to the Funds. (*See* Dkt. No. 1, ¶¶ 27–29). However, after considering Plaintiffs' complaint, the Lawrence Affidavit, and the relevant agreements discussed above, the Court cannot find at this time that Defendant Highliners has objectively manifested an intent to be bound by the CBA. Plaintiffs do not assert that the Union signed a Letter of Assent with Defendant Highliners. (*See generally* Dkt. No. 1). Instead, Plaintiffs allege that Defendant Highliners is bound to the CBA based on the following series of agreements:

> Defendant [Highliners] had signed a Letter of Assent to be bound by the outside construction agreement with a line construction chapter of NECA and IBEW Union Nos. 2, 53, 222, and 876 and, therefore, was party to the [ERA] for work performed in IBEW Local Union No. 1249's jurisdiction and, therefore, Defendant [Highliners] was bound to the [OUA].

(Dkt. No. 1, ¶ 20; *see also* Dkt. No. 16-1, ¶¶ 12–13).

It is not clear from Plaintiffs' submissions that in signing the Letters of Assent, Defendant Highliners was binding itself to the ERA specifically. Plaintiffs do not allege that the ERA was part of the specific outside labor agreements referenced in the Letters of Assent that Defendant Highliners signed, and the letters themselves do not make explicit reference to the ERA. Nor do Plaintiffs allege that the ERA was still in effect at the time Defendants signed the Letters of Assent with the local unions (or that the ERA was still in effect at the time the Union performed work for Defendant Highliners), and such a fact is not obvious from the face of the ERA itself. (*See* Dkt. No. 16-2, at 97–99).

Even if Plaintiffs have alleged that they are bound to the ERA, Plaintiffs do not adequately allege whether the Union performed work during an "emergency response," such that the terms of the ERA, requiring Defendant to contribute to the Funds in accordance with the OUA, are triggered. (*See* Dkt. No. 16-1, ¶ 15 (stating in a conclusory fashion that Defendant Highliners "employed members of the Union and linemen who worked in the Union's area during January 2023 on projects that are covered by the CBA"); *see also* Dkt. No. 16-2, at 97 (explaining that the terms of the ERA apply only under specific circumstances)). And while the Lawrence Affidavit states that Defendant Highliners "prepared and submitted" a "remittance report" for January 2023, indicating that Defendant Highliners "owes $68,445.19 in contributions and deductions to Plaintiffs," (Dkt. No. 16-1, ¶ 20), the referenced report is not signed or dated and contains no address or contact information for the employer, listed as Hotwire Line Construction, (*see* Dkt. No. 16-2, at 142–43). Accordingly, Plaintiffs' allegations are not sufficient to establish Defendant Highliners' liability under Section 515 of ERISA. While the Court denies Plaintiffs' motion for default judgment on this basis, the Court will allow Plaintiffs to renew their motion with accompanying evidence indicating Defendant Highliners is bound to the CBA.

### 3.  Defendant Dearing

Plaintiffs also allege in their Second Cause of Action that individual Defendant Dearing "breached his fiduciary duties" and is personally liable for the delinquent contributions owed to the Local 1249 Funds, the "interest thereon at the consolidated rate of return on the . . . Local 1249 Funds' investments, plus costs and expenses of collection, audit fees and attorneys and paralegal fees and costs," and "[t]o restore to the Plans any profits that Defendants made through use and retention of the assets of the . . . Local 1249 Funds." (Dkt. No. 1, ¶ 47). The Third Cause

of Action alleges that Defendant Dearing "damaged the . . . Funds," and is liable for the same items as described in the Second Cause of Action, excluding audit fees. (*See id.* ¶ 55).

Under ERISA, a person is a "fiduciary" with respect to a plan, in relevant part, to the extent "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). A fiduciary with respect to a plan must discharge his duties "solely in the interest of the participants and beneficiaries" and is prohibited from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. §§ 1104(a)(1), 1106(b)(1). Additionally, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a).

Plaintiffs' theory of liability with respect to Defendant Dearing is that he "breached his fiduciary duties to the . . . Funds" "when he chose not to pay the contributions to the . . . Funds." (Dkt. No. 16-4, at 11; *see also* Dkt. No. 1, ¶¶ 41, 54). But as discussed in the previous section, Plaintiffs have not established that Defendant Highliners was obligated to make contributions to the Funds because Plaintiffs have not shown Defendant Highliners was bound to the CBA. Accordingly, the Court declines to enter liability against Defendant Dearing on this record but will allow Plaintiffs to renew their motion as discussed above.

### C. Attorneys' Fees and Costs

Plaintiffs argue that "[a]n award of fees and costs against Defendant [Highliners] is mandatory" pursuant to 29 U.S.C. § 1132(g)(2)"; that an award of attorneys' fees and costs should be granted against Defendant Dearing pursuant to 29 U.S.C. § 1132(g)(1); and that

"Plaintiffs are contractually entitled to an award of attorneys' fees and costs against Defendants in connection with collecting the debt" pursuant to 29 U.S.C. § 185(a). (Dkt. No. 16-4, at 11–14).

Under 29 U.S.C. § 1132(g)(2), in an action "by a fiduciary for or on behalf of a plan to enforce [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan" "reasonable attorney's fees and costs of the action, to be paid by the defendant." In all other types of ERISA cases, in an action brought "by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). To be eligible for a fee award under Section 1132(g)(1), a party must have "achieved 'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 244 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). At this time, judgment in favor of the plan has not been awarded and Plaintiffs have not had any degree of success on the merits. Accordingly, the Court will not award attorneys' fees based on either Section 1132(g)(1) or (g)(2).

29 U.S.C. § 185(a) provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of the parties." Plaintiffs state that "the language of the Plaintiffs' CBA, Plaintiffs Funds' Restated Agreements and Declaration of Trusts, and Collections Policy clearly and unambiguously require Defendants to reimburse Plaintiffs for all attorneys' fees, costs, and disbursements incurred in seeking to collect the debt." (Dkt. No. 16-4, at 12). As previously addressed, the Court has not yet found that Defendants were bound to the CBA. The Court has also not yet found that Defendants were parties to the Plaintiffs Funds' Restated Agreements and Declaration of Trusts, or the Collections Policy, which relies on Defendants being bound to the

11

CBA. (*See* Dkt. No. 16-1, ¶ 14). Thus, the Court will not award attorneys' fees on the basis that Defendants are contractually obligated to pay them at this time. Plaintiffs may renew their motion for attorneys' fees and costs if they renew their motion for default judgment in accordance with this decision.

### III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for default judgment, (Dkt. No. 16), is **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiffs must file any renewed motion for default judgment within 30 days of the date of this Decision, curing the deficiencies identified. If Plaintiffs do not wish to file a renewed motion for default judgment, they must file a status report notifying the Court within 30 days of the date of this Decision stating how they intend to proceed; and it is further

**ORDERED** that Plaintiffs serve copies of this Memorandum-Decision and Order on Defendants and file a certificate of service.

**IT IS SO ORDERED.**

Dated: May 28, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge